Heald *v.* Hodgdon.

---

## ISRAEL HEALD *vs.* JOHN HODGDON.

Under the resolve of *March* 17, 1835, in favor of certain officers and soldiers of the revolutionary war, the land granted is not to be considered as so " surveyed and laid out," as to entitle the holders of certificates to make their selection of lots, before the Surveyor General has made a return of his survey into the Land Office.

THIS was a special action on the case brought to recover damages against the Land Agent of the State, for not assigning and con-

veying to the plaintiff five lots of land, agreeably to a resolve in favor of certain revolutionary officers and soldiers, *March* 17, 1835. The parties agreed, that the townships specified in the resolve, were actually surveyed by the deputy surveyor, *Dec.* 3, 1835; the return of the plan and field notes was made by the deputy to the Surveyor General, *Dec.* 23, 1835; and by him examined and returned into the land office in *Augusta, Jan.* 1, 1836. The plaintiff had become the assignee of five certificates, granted by the Land Agent pursuant to that resolve, and on *Dec.* 12, 1835, gave the defendant written notice of the assignment of the certificates to him, and that he had selected certain lots described, and requested that a conveyance thereof might be made to him, and filed the notices in the land office at *Bangor.* At this time the plaintiff was informed by the Surveyor General, that no return of the survey of the township had been made to him. No selection of any lots had been previously made, nor had there been any assignment of the public lots. The defendant denied the right to make the selection at that time, and refused to make the conveyance. A nonsuit or default was to be entered by the agreement, as the opinion of the Court should be.

*Mellen* and *A. W. Paine,* for the plaintiff, cited the resolve of *March* 17, 1835, in favor of certain officers and soldiers of the revolutionary war; *stat.* 1828, *c.* 393; *stat.* 1824, *c.* 280; and contended, that the plaintiff had a right to make the selection of his lots on the 12th of *December,* 1835; and that the Land Agent was bound by law to make the conveyance of those lots to the plaintiff. The law provides, that the selection of the lots may be made when the lots are *surveyed and laid out.* This was done. It was not necessary, that the plan should first be made, and returned into the land office. The survey and plan are different things. *Ripley* v. *Berry,* 5 *Greenl.* 24.

*F. Allen,* for the defendant, and *Hodgdon, pro se,* contended, that the township could not be considered as surveyed and laid out, as the law requires, until all power of the Surveyor General over the survey was gone by a return into the land office. No selection of lots could legally be made until this was done, and until the public lots had been selected, as the law requires. These very lots might

have been selected as the public lots. The Agent would have violated his duty, to have suffered this attempt of the plaintiff, in fraud of the rights of others, to have been successful.

The opinion of the Court was drawn up by

Shepley J. — By the act of the 20th of *February*, 1828, *c.* 393, all former acts providing for the sale and settlement of the public lands are repealed. That act provides for the appointment of a Land Agent and prescribes his duties. He is to keep correct plans of the surveys; may employ assistants, for whose conduct he is responsible; and is authorized to execute deeds in behalf of the State, when the grantees have complied with the conditions of their grants.

The act of the 18th of *March* 1830, *c.* 481, makes it his duty to select the lots reserved for public uses. The act of the 8th of *March*, 1832, *c.* 30, provides, that the Land Agent, instead of returning copies of the plans and field notes to the office of the Secretary of State, shall deposit them in a Land Office at *Bangor*, and the originals in the Land Office at *Augusta*. The resolve of the 17th of *March*, 1835, after making the grants under which the plaintiff claims, directs the Land Agent to cause the townships to be surveyed and laid out into lots; and authorizes him to issue certificates before the surveys shall be completed, which are to entitle the holders to a conveyance " whenever said land shall be surveyed and laid out." It is made the duty of the Agent " to keep correct plans of all surveys which shall be made as aforesaid, and to mark upon each lot the name of the person who shall first make choice of the same." The act of the 24th of the same *March*, *c.* 192, provides for the appointment of a Surveyor General, whose duty it is to survey, superintend, and direct the surveying of the public lands, and he is authorized to employ assistants, for whose conduct he is responsible. By this act the whole duty in relation to the surveys is taken from the Agent and transferred to the Surveyor and his assistants. The fifth section provides, that no land shall be sold until all the land in the township has been surveyed and lotted; and that the Surveyor General shall note upon his plans the growth, soil, streams, mill sites, and what roads may be neces-

sary, and make return thereof, together with the field notes, to the Land Agent in three months after he shall have performed the same.

Although the resolve requires the Land Agent to cause the surveys to be made, yet he must make them according to the laws of the State, and use such means to do it as the laws authorize. And after the appointment of a Surveyor General he must make them through him. The resolve speaks of a time when " the survey of said land shall be completed ;" and until that time certificates might issue ; and after that time the holders are entitled to make their choice. Other acts also refer to the time when the lands are surveyed and lotted, as a period from which rights and duties are to be reckoned. The act of the 18th of *March*, 1830, provides, that the owners in certain cases within three months after the lands shall have been surveyed and lotted, shall give notice to the Land Agent to appoint a person, who, with one appointed by themselves, is to designate and note the lots reserved for public uses. And in case of their neglect for such a period the Land Agent alone may appoint.

When was it intended, that the lands should be considered as surveyed and lotted, so that the time should be certain when these various rights accrued to the parties interested ? The answer must be, whenever an official act has been performed, which makes the survey a matter of record, after which no change can be made by any public officer. This will be apparent, whether the language of the statutes, or the duties to be performed, are considered. The Surveyor General is made responsible for the acts of his assistants, and that implies the right to control and correct their proceedings. A plan is to be made and the information to be placed upon it is in some respects to depend upon his personal judgment. The power to alter and correct his opinions upon better information necessarily remains with him until his duties are finally completed, and his return is made according to law. If he should ascertain after his deputy has made a return to him, that no numbers were affixed to the lots in a whole range, could he be excused if he did not correct it, or vacate the whole survey ? If the language of the resolve be examined the Land Agent is required to mark upon each lot, on the plan of course, the name of the person choosing it, and this he could not do until it was returned to him, and the Surveyor

is not obliged to return for three months after he has made the survey. Any attempt of the Land Agent to do it before, might have been entirely ineffectual, because the Surveyor General, for error detected, or other sufficient cause, might have changed the whole survey and allotment.

If the Surveyor General were charged with wilful neglect or misconduct in making an erroneous plan and survey, could it be sustained without proving, that he had given it his last and final official sanction by making his return as the law requires? It is all necessarily *in fieri* until that time. There must be a time before which alterations and correction of errors may be made, and after which none can be, by any officer whatever. And that time is necessarily fixed by the official act of return, when it becomes a record of the State.

The selection was in this case made by the plaintiff before the deputy surveyor had made his return to his principal, and before his proceedings had any confirmation or official sanction.

*Plaintiff nonsuit.*